IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | CASE NO.: 1:17CR0092 |
| | ) | |
| Plaintiff, | ) | JUDGE DONALD C. NUGENT |
| | ) | |
| v. | ) | |
| | ) | |
| CATHERINE WILSON, | ) | <u>SENTENCING MEMORANDUM</u> |
| | ) | |
| Defendant. | ) | |

Now comes the United States of America, through Justin E. Herdman, United States Attorney, and Matthew B. Kall, Assistant U.S. Attorney, and asks this Court to adopt the loss calculations detailed in this Memorandum and impose a sentence within the advisory guidelines range.

**I.    BACKGROUND**

On March 15, 2017, Defendant Catherine Wilson was charged by way of indictment with Bank Fraud, in violation of 18 U.S.C. § 1344(2).  (R. 1: Indictment, PageID 1-4).  Specifically, she was accused of embezzling funds from her former employer, which were in the custody of financial institutions, over the course of several years.  On September 6, 2017, she pled guilty pursuant to a written plea agreement.  (R. 17: Plea Agreement, PageID 38-49).  Wilson and the government agreed that the base offense level for her crime was 7, under U.S.S.G. § 2B1.1(a)(1).

Although Wilson admitted she defrauded Koppel repeatedly over the course of several years, she was unwilling to stipulate to the loss amount. She did, however, agree that she abused a position of trust, and a two-level adjustment was appropriate under U.S.S.G. § 3B1.3.

The government is prepared to present evidence at the sentencing hearing to establish that the loss amount was $282,474.38, which causes a 12-level increase under U.S.S.G. § 2B1.1(b)(1)(G). The government will establish this loss figure through the testimony of Special Agent Phillip Hogan, who is assigned to the Secret Service Financial Crimes Task Force. S/A Hogan has been a Secret Service agent since 2005, and has extensive experience investigating financial crimes. He is a Kent State University graduate, with a degree in Criminal Justice. Prior to being assigned to the Cleveland Field Office in 2015, S/A Hogan investigated financial crimes for the Secret Service in Los Angeles from 2005-10, and was assigned to protective intelligence and counter-surveillance duties in Washington D.C. from 2010-15. He also previously served as a Police Officer in Painesville, Ohio.

Before Special Agent Hogan was assigned this case, it was assigned to another Secret Service Agent, Special Agent Henderhan. The case was referred to S/A Henderhan from a local police department, based on the complaint from the victim, Koppel Advertising. Koppel reported that Wilson—a long-time employee who handled various financial tasks—had embezzled substantial sums of money over the course of several years. Wilson used funds in Koppel's business checking accounts without authorization to pay her own personal expenses. To conceal her embezzlement, Wilson altered legitimate bank statements from the financial institutions to remove any reference to the unauthorized transactions. Koppel supplied S/A Henderhhan copies of these altered bank statements, many of the legitimate bank statements, and

2

an accounting of what it believed to be its loss.  Koppel's initial estimate was that Wilson had stolen approximately $345,000.

S/A Henderhan compared the fraudulent bank statements to the original statements that were in his possession.  If a financial transaction was listed on the original statement, but not the other, it was included in S/A Henderhand's loss estimate.  The loss that S/A estimated using this methodology was $288,235.47.  Notably, this figure did not include transactions from some months, due to the unavailability of certain bank statements.

S/A Henderhan interviewed Wilson.  She admitted in the interview that she had embezzled funds from Koppel, but denied that the loss amount was anywhere near the estimate that Koppel had suggested.  Instead, she estimated that she had taken between $20,000 and $30,000.  Wilson subsequently retained counsel and the government attempted for a lengthy period of time to negotiate an agreement as to the actual loss amount.  Over a year prior to indictment, the government provided copies of financial records such as the real and altered bank statements to defense counsel and requested that Defendant use those records to provide an alternate loss figure.  Similar requests were made after indictment, in an attempt to reach an agreement on loss in the plea agreement.  Despite numerous requests, Defendant Wilson has never provided an estimate supported by financial records of what she believes the loss figure was.

After S/A Henderhan left the Secret Service, the matter was reassigned to Special Agent Hogan.  In preparation for indictment, in anticipation of a possible trial, and in order to provide this Court with a loss figure for purposes of sentencing, S/A Hogan engaged in an extensive review of the financial records.  At sentencing, he will testify that he believes the loss figure is $282,474.38, based on his independent review of the financial records and individual

transactions. The documents used to reach this conclusion were all produced to Defendant Wilson in discovery.

S/A Hogan began with the bank statements and compiled a spreadsheet with every transaction from 2012, 2013, and 2014 that appeared on the original bank statements, but not on the altered bank statements. He did not include 2011, due to the age of the transactions and the relatively low dollar amount, which S/A Henderhan had estimated to be slightly over $30,000 for the year. He also did not include August and September of 2014, since Defendant Wilson was fired before she could prepare altered bank statements and the financial institution had reimbursed the victim for losses in those months. Based on the amount of fraudulent transactions that she had conducted in the previous six months, however, it appeared likely that the loss for those two months would have totaled over $20,000.

S/A Hogan corroborated his loss caluclations by subpoenaing records from several companies. Since Defendant Wilson caused Koppel to pay many of her own personal bills and expenses, the government was able to corroborate these transactions through records from Wilson's personal creditors, such as credit card companies. The total loss figures were:

| 2012 | $68,308.29 |
| 2013 | $108,982.29 |
| 2014 | $105,183.80 |
| **TOTAL** | **$282, 474.38** |

S/A Hogan's loss figure was calculated in accordance with the definition of loss under the federal sentencing guidelines and applicable Sixth Circuit caselaw. It is a calculation of the actual loss – the reasonably foreseeable pecuniary harm that resulted from the offense. The calculation did not include any collateral costs, such as late fees, interest, penalties, or returned

4

check fees. The calculation also did not include any figures reflecting incidental expenses the victim incurred relating to investigating this fraud and preventing future such crimes.

If there was an ambiguity as to whether a particular transaction should be included, S/A Hogan erred on the conservative side and did not include it in the loss figure. As previously noted, losses for 2011, and August and September 2014 were not included, although it is clear that Wilson embezzled funds during those time frames.

## II.     LAW AND ARGUMENT

### A.     SENTENCING LAW

The U.S. Supreme Court has held that the U.S. Sentencing Guidelines are "effectively advisory." United States v. Booker, 543 U.S. 220, 245 (2005). The Supreme Court advised sentencing courts that, even "[w]ithout the 'mandatory' provision, the [Sentencing Reform] Act nonetheless requires judges to take account of the Guidelines together with other sentencing goals," specifically citing those goals listed in Title 18, U.S.C. § 3553(a). Id. at 259. Therefore, a district court must properly calculate and consider the advisory Guidelines range. See, e.g., Gall v. United States, 522 U.S. 38 (2007); United States v. Haj-Hamed, 549 F.3d 1020 (6th Cir. 2008).

In Rita v. United States, 551 U.S. 338 (2007), the Supreme Court held that courts of appeals may apply a non-binding presumption of reasonableness to a district court sentence that reflects a proper application of the Sentencing Guidelines. Id. at 347. The Supreme Court further held that rather than having independent legal effect, the courts of appeals' "reasonableness" presumption "simply recognizes the real-world circumstance that when the district judge's discretionary decision accords with the Commission's view of the appropriate application of §3553(a) in the mine run of cases, it is probable that the sentence is reasonable." Id. at 350-51.

5

To facilitate appellate review, the Sixth Circuit has encouraged the sentencing judge to "explicitly state [the] reasons for applying particular Guidelines, and sentencing within the recommended Guidelines range, or in the alternative, for choosing to sentence outside that range." United States v. Jones, 399 F.3d 640, 650 (6th Cir. 2005); see also Gall v. United States, 522 U.S. 38 (2007); United States v. Haj-Hamed, 549 F.3d 1020 (6th Cir. 2008).

Title 18, United States Code, Section 3553(a) states, in pertinent part:

(a) Factors To Be Considered in Imposing a Sentence.— The court shall impose a sentence sufficient, but not greater than necessary, to comply with the purposes set forth in paragraph (2) of this subsection. The court, in determining the particular sentence to be imposed, shall consider—

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed—
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
>>
>> (B) to afford adequate deterrence to criminal conduct;
>>
>> (C) to protect the public from further crimes of the defendant; and
>>
>> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
>
> (3) the kinds of sentences available;
>
> (4) the … sentencing range…;
>
> (5) any pertinent policy statement…;
>
> (6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
>
> (7) the need to provide restitution to any victims of the offense.

The properly calculated Guidelines are the starting point and initial benchmark at all sentencing proceedings. Gall v. United States, 552 U.S. 38 (2007); United States v. Peebles, 624 F.3d 344 (6th Cir. 2010); United States v. Petrus, 588 F.3d 347 (6th Cir. 2009).

    B.    ADVISORY GUIDELINES CALCULATION

        1.    Base Offense Level

As noted above, the parties stipulated in the plea agreement that the base offense level is 7, under U.S.S.G. § 2B1.1(a)(1). The Probation Department concurred with this recommendation, and there were no objections to this in the Presentence Report.

        2.    Loss Amount

Guideline § 2B1.1 increases a defendant's base offense level for fraud according to the amount of pecuniary loss the defendant caused. As a general rule, this amount is "the greater of actual loss or intended loss." U.S.S.G. § 2B1.1, applic. n. 3(A)

Under Rule 32 of the Federal Rules of Criminal Procedure, a sentencing court "must—for any disputed portion of the presentence report or other controverted matter—rule on the dispute." Fed. R. Crim. P. 32(i)(3)(B). The Sixth Circuit requires "'literal compliance' with Rule 32, so when matters are contested the court must explain its calculation methods." United States v. Poulsen, 655 F.3d 492, 512–13 (6th Cir. 2011) (quoting United States v. Nelson, 356 F.3d 719, 722 (6th Cir. 2004)). However, when calculating loss, a district court "need only make a reasonable estimate of the loss." U.S.S.G. § 2B1.1 cmt. n.3(C). In other words, a court "does not have to establish the value of the loss with precision; it simply needs to publish the resolution of contested factual matters that formed the basis of the calculation." Poulsen, 655 F.3d at 513

When the government attempts to prove a loss amount, the court is required to make findings using a preponderance of the evidence standard. Id.; see also United States v. Howley, 707 F.3d 575, 583 (6th Cir. 2013) ("The Guidelines require only a reasonable estimate of actual

or intended loss within broad ranges."). Moreover, "[t]he sentencing judge is in a unique position to assess the evidence and estimate the loss based upon the evidence. For this reason, the court's loss determination is entitled to appropriate deference." § 2B1.1 applic. n. 3(C) (citing 18 U.S.C. § 3742(e) and (f)).

The evidence the government is prepared to present at sentencing, summarized above, is more than sufficient to satisfy this standard. Accordingly, a 12-level increase, under U.S.S.G. § 2B1.1(b)(1)(G) will be appropriate.

### 3. Abuse of Position of Trust

Defendant Wilson was a long-time employee of the victim company. Over time, she was given additional duties and responsibilities, including authority to engage in approved financial transactions. She abused that authority in the course of committing this offense. Therefore, a two-level adjustment for abuse of position of trust, pursuant to U.S.S.G. § 3B1.3, is appropriate. The parties stipulated in the plea agreement that this adjustment was appropriate, and the Probation Department agreed in the presentence report.

### 4. Acceptance of Responsibility

When first approached by investigating agents, Defendant Wilson admitted that she embezzled from Koppel while employed there. While the government believes she minimized the loss amount, she did plead guilty pursuant to a plea agreement. She submitted a lengthy statement to the Probation Department in which she admits she stole from Koppel. In that same statement, however, she gave several excuses for her crimes, claimed she had somehow been mistreated as an employee, and hurled various unfounded accusations against her former employer.

A defendant who pleads guilty is not entitled to a reduction for acceptance of responsibility as a matter of right, although it is a significant factor that a district court should

consider.  U.S.S.G. § 3E1.1(a) cmt. n. 3.  Where a defendant pleads guilty, but nonetheless mischaracterizes her criminal conduct and attempts to improperly blame others for or minimize it, a district court may deny an adjustment for acceptance of responsibility.  United States v. Lay, 583 F.3d 436, 449 (6th Cir. 2009); United States v. Wolfe, 71 F.3d 611, 616 (6th Cir.1995).

In the plea agreement, the government agreed to recommend a three-level adjustment for acceptance of responsibility, if Wilson continued to demonstrate she was entitled to such a reduction.  At this time, the government continues to recommend such an adjustment.  Based on the written statement she made, and depending on the oral allocution she will make and the possibility that she may be frivolously contesting the loss amount at her hearing, the government continues to reserves the right to argue that Wilson has not continued to accept responsibility.

        5.        Criminal History

Defendant Wilson has to previous convictions, but the government agrees that neither is eligible for criminal history points.  She was convicted of passing bad checks in 1998.  That conviction occurred too long ago to qualify.  She also pled guilty to food stamp trafficking in 2016 in Cuyahoga County.  In that case, however, defendant was referred to a diversion program and is still pending.  Therefore, the government concurs with the Probation Department's determination that it does not qualify for criminal history points.  Therefore, Defendant Wilson is in criminal history category I.

   6.  Advisory Guidelines Range

Based on the calculations recommended above, the government believes the guideline range is as follows:

| Base Offense Level | 7 | U.S.S.G. § 2B1.1(a)(1) |
|---|---|---|
| Loss Amount | +12 | U.S.S.G. § 2B1.1(b)(1)(G) |
| Abuse of Trust | +2 | U.S.S.G. § 3C1.3 |
| Acceptance | -3 | U.S.S.G. § 3E1.1 |
| Final Offense Level | 18 | |
| Criminal History | I | |
| Advisory Range | 27-33 mos. | |

  C.  THE SECTION 3553(A) FACTORS

Based on the nature and circumstances of the offense and Defendant's personal history and characteristics, the government believes that a sentence within the advisory guidelines range is appropriate in this case.

The offense, while non-violent, was certainly serious. This was not a one-time lapse in judgment or an isolated incident. Defendant repeatedly abused her position of trust and took advantage of her employer's unsophisticated business setup. For several years, she used that business as her personal piggy bank, to pay for whatever she wanted or needed. The total loss amount was substantial—over one-quarter million dollars. Like many similar frauds, this began small and grew month by month. The first several months, she stole only a couple thousand dollars. As time went on, she took more and more. By the end, she routinely stole over $10,000 each month from Koppel. Her fraud would have continued if Koppel had not discovered it and fired her.

In the Presentence Report, Koppel detailed the substantial impact that Defendant's had on the business and him personally. (R. 19-1: Presentence Report, PageID 96-100). Even though Koppel once caught her stealing from him and reprimanded her, he continued to allow her to

10

work there.  She repaid this act of grace with further crimes.  She showed callous indifference to Koppel's personal situation.  Even on days when he was suffering—such as the day of a major car accident or his father's death—she stole from him.  (Id., PageID 99).  Wilson's crimes caused Koppel's business to suffer.  There were even times that Koppel did not have the money to pay for gas or utilities.  Defendant watched Koppel struggle to make ends meet at the business, while at the same time, doctored bank statements to conceal her fraud.  As Koppel succinctly put it, "She has put a wrecking ball through my business and has knocked my family finances off its foundation."  (Id., PageID 100).  Further, despite Defendant's assurances that she would "make it right," she has yet to repay "one dime."  (Id.).  The impact that this crime had on the victim shows the seriousness of the offense and demonstrates the need for significant punishment.

      Defendant's personal history and characteristics are relatively unremarkable.  She is 63 and was born and raised in the Cleveland area.  She was raised in a good neighborhood, and chose to left home at age 18 to be on her own.  She married in her early 20s and had five children, all of whom appear to live in the Cleveland area.  Her marriage ended when her husband died in 2013.  She has been renting the same residence in Bedford Heights for a substantial period of time.  Defendant has significant medical issues, including physical problems set forth in paragraphs 55-59 of the presentence report, and certain mental health issues described in paragraph 60.

      Defendant is a high school graduate, and took some college classes to earn an associate's degree.  She was employed for a long period of time at Koppel Advertising – the victim in this case.  She is not currently working, and appears to be supporting herself with social security income, a Veterans Administration benefit from her deceased husband's years of service, and

gifts from her children. She does not have any notable assets, and has substantial liabilities such as credit card debt, unpaid cellphone bills, and medical bills.

As noted above, Defendant was previously convicted of passing bad checks, and she has admitted engaging in food stamp trafficking. The food stamp trafficking case is pending in Cuyahoga County and she was referred to a pretrial diversion program.

While Defendant pled guilty and admitted she stole from Koppel, her statement of responsibility shows that she is not truly remorseful for her conduct. She stated that the person who she hurt most was "herself." She complained that Koppel kept increasing her duties and responsibilities, without compensating her. Defendant appears to use that as a justification for her crimes. She could have quit or found another job. Instead, she simply chose to take what she felt she deserved. Her statement of acceptance also includes vague accusations against the victim. Even if these any of these accusations were true, they in no way excuse her conduct.

The government believes a sentence within the advisory guidelines range is sufficient, but not greater than necessary, to satisfy the needs of sentencing. Such a sentence would punish Wilson for her crime, involving the willful embezzlement of over $250,000 from a small business. Her crime occurred over several years. She abused her position of trust and stole from her employer. Her crime caused significant hardship. She does not appear truly remorseful for her actions, and therefore, a within-guidelines sentence is necessary to provide just punishment, promote respect for the law, and to protect the public from her in the future. Such a sentence would also serve as a general deterrent to others who are in positions of trust at businesses.

    D.    <u>RESTITUTION</u>

Pursuant to 18 U.S.C. § 3663A, restitution is required in this case, as Defendant's conduct caused a monetary loss to an identifiable victim. Defendant agreed in her plea

agreement that she was required to pay restitution. The government asks that this Court order restitution equal to the loss amount in this case: $282,474.38.

### III. CONCLUSION

For the foregoing reasons, the government respectfully requests that this Court make a factual finding that the loss amount in this case was more than $250,000. Further, the government asks this Court to impose a sentence within the advisory guidelines range and to order Defendant to pay restitution to the victim.

        Respectfully submitted,

        JUSTIN E. HERDMAN
        United States Attorney

By:   /s/ Matthew B. Kall
        Matthew B. Kall (NY: 3003738)
        Assistant United States Attorney
        United States Court House
        801 West Superior Avenue, Suite 400
        Cleveland, OH 44113
        (216) 622-3915
        (216) 522-8355 (facsimile)
        Matthew.B.Kall@usdoj.gov

CERTIFICATE OF SERVICE

    I hereby certify that on this 19th day of January 2018 a copy of the foregoing document was filed electronically. Notice of this filing will be sent to all parties by operation of the Court's electronic filing system. All other parties will be served by regular U.S. Mail. Parties may access this filing through the Court's system.

                                                /s/ Matthew B. Kall
                                                Matthew B. Kall
                                                Assistant U.S. Attorney